IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MALYNDA McMURTRY, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case Number CIV-05-84-C |
| ) | |
| AETNA LIFE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed the present action seeking damages for Defendant's alleged breach of contract and bad faith. Defendant answered, arguing Plaintiff's bad faith claim is barred as the insurance plan in question is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (ERISA). Plaintiff denies that ERISA applies, arguing the plan is exempt from that statute because it is a "governmental plan" as defined by 29 U.S.C. § 1002(32). At the direction of Judge Leonard, Defendant filed a Motion for Summary Judgment[1] addressing the applicability of ERISA to the plan in question. Plaintiff filed a response. Defendant has also filed a supplement to its motion and Plaintiff has responded to that brief.

---

[1] The Court notes Defendant's motion wholly fails to comply with LCVR 56.1(b), in that the facts on which the motion relies are not separately numbered. But for the fact that the motion had been pending for some time and that the relevant facts were discernible from Plaintiff's brief, Defendant's motion would have been stricken. Counsel are cautioned that future rule infractions will not be overlooked.

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The dispositive issue in Defendant's motion is whether or not the plan offered by Norman Regional Hospital (NRH) is a governmental plan.  If so, then the plan is exempt from ERISA.  If not, then Plaintiff's request for extra-contractual damages is preempted and must be dismissed.  See Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 466 (10th Cir. 1997).  ERISA defines a governmental plan as follows:

> The term "governmental plan" means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.  The term "governmental plan" also includes any plan to which the Railroad Retirement Act of 1935, or 1937 [45 U.S.C.A. § 231 et seq.] applies, and which is financed by contributions required under that Act and any plan of an international organization which is exempt from taxation under the provisions of the International Organizations Immunities Act [22 U.S.C.A. § 288 et seq.].

29 U.S.C. § 1002(32) (alterations in original).  Whether or not a plan falls within this definition is a relatively easy issue in certain instances, e.g., the Federal Employees Health Benefit Plan is clearly established or maintained for the benefit of employees of the Government of the United States.  In other instances, such as the present case, the question is not so clear.  While the plan at issue here clearly meets the definition of a plan under ERISA, whether that plan was established or maintained for the benefit of employees of a political subdivision, agency, or instrumentality of the State of Oklahoma is a difficult question.[2]  Neither party has directed the Court to Tenth Circuit case law addressing the

---

[2] Plaintiff argues that Judge Leonard has already decided this issue in ruling on NRH's Motion to Dismiss.  Plaintiff's argument is specious and misleading.  First, Judge Leonard's Order clearly noted that it was addressing NRH's status only to the extent Plaintiff had filed a tort claim against NRH.  Judge Leonard's Order made clear that his determination was limited to finding NRH was a political subdivision to the extent NRH was entitled to protection of the Oklahoma

method for determining when a plan falls within the definition of governmental plan.[3] Thus, it appears this is a matter of first impression within the circuit.

The Court finds the test utilized by the Seventh Circuit provides the most appropriate means to resolve the matter. That test relies upon a methodology developed "to determine if a particular entity is a governmental subdivision, agency or instrumentality under the NLRA and the LMRA" Shannon v. Shannon, 965 F.2d 542, 547-48 (7th Cir. 1992).

> The test comprises two prongs, only one of which need be satisfied. The entity is a political subdivision if it is "*either* (1) created directly by the state, so as to constitute departments or administrative arms of the government, *or* (2) administered by individuals who are responsible to public officials or to the general electorate."

Id. at 548, quoting NLRB v. Natural Gas Utility District of Hawkins County, Tennessee, 402 U.S. 600, 604-05 (1971). In applying this test, the courts examine the manner in which the entity was formed, to whom it reports, who has the ultimate control of the entity, how the entity's employees are paid and whether they are entitled to the protections afforded other governmental employees. Here, the undisputed facts establish the following:

---

Governmental Tort Claims Act. Footnote 5 in Judge Leonard's Order clearly stated that he expressed no opinion regarding ERISA preemption. Second, it is clear under the law that questions of ERISA applicability must be determined using federal law. See Rose v. Long Island R.R. Pension Plan, 828 F.2d 910, 915 (2d Cir. 1987) ("Because ERISA is a federal statute, the term 'political subdivision' must be interpreted by reference to federal law, in the absence of clear legislative intent to the contrary." (citing NLRB v. Natural Gas Utility Dist. of Hawkins County, 402 U.S. 600, 602-03 (1971))).

[3] Defendant argues the Circuit's decision in McGraw v. Prudential Insurance Company of America, 137 F.3d 1253 (10th Cir. 1998), is instructive. However, that case is clearly factually distinguishable as it was undisputed in that case that the employee worked for a private company. Here, it is the status of Plaintiff's former employer, NRH, that is in dispute.

The City of Norman established NRH in 1946. In 1969, a public trust, Norman Regional Hospital Authority (Authority), took control of NRH. In 1970, the City of Norman leased the hospital to the Authority. The lease was amended in 1991. The Authority has also purchased additional land on which additional buildings have been built. Thus, a portion of NRH is owned by the City of Norman and leased to the Authority and a portion is owned by the Authority. The City of Norman is the sole beneficiary of the trust. The Trustees of the Authority are appointed by the Mayor of the City of Norman with the approval of the City Council. Any vacancies within the Trustees are filled by the current Trustees submitting a list of candidates to the Mayor who then makes the appointment subject to the approval of the City Council. Trustees may be removed for cause under applicable law. The Trustees are required to execute oaths of public office. NRH's budget is submitted to and approved by the City Council. The Authority must comply with State competitive bidding and other laws in awarding contracts. The Authority and Trustees are responsible for the operation of NRH. The Trustees have the authority to enter into contracts, purchase or lease land or buildings and otherwise obligate the Authority without direct action by the City Council. The Trustees may issue bonds or notes for the benefit of the Authority, again without direct action by the City Council. The obligations, debts, and expenses incurred by the Trustees or Authority are the responsibility of the Authority and not the City of Norman. The employees of NRH who are covered by the plan in question are hired by NRH. Job openings at NRH are not listed with the City and NRH does not list job openings for positions with the City on their website. Salaries and benefits for NRH employees are determined by NRH and

are not within the same salary structure as that for employees of the City of Norman. NRH employees are not protected by civil service rules that may apply to employees of the City of Norman.

In <u>Shannon</u>, the Seventh Circuit considered similar facts along with case law developed in ERISA and Labor Relations Management Act cases in resolving the governmental entity question. First, is the question of the creation of the entity. Here, as noted above, NRH was created by the City of Norman. Thus, it has the pedigree of a governmental entity. In this regard NRH is similar to the utility district in <u>Natural Gas Utility District</u>, 402 U.S. 605. Likewise, the Trustees of the managing entity, the Authority, are appointed by the City, and those Trustees may be removed by the public officials. <u>Id.</u> at 608. Thus, there is public accountability and consequently, indicia of being a governmental entity. However, other factors found to be pertinent, such as the power of eminent domain and whether the entity's records are public, are not present with NRH. Likewise, the employees are not covered by civil service protections, are not hired by the City and are not subject to the same pay scale as City employees. In this regard, NRH is similar to the Truman Medical Center which was found to be a private entity in <u>Truman Medical Center, Inc., v. NLRB</u>, 641 F.2d 570 (8th Cir. 1981). The separateness of the employees and their payroll was an important fact in <u>Brock v. Chicago Zoological Society</u>, 820 F.2d 909, 913 (7th Cir. 1987), where the court found the entity to be private. Indeed, it is the nature of the employees' relationship to NRH and the methodology for funding the plan that is decisive on the issue.

Because the definition of what constitutes a "governmental plan" under ERISA is ambiguous, it is appropriate to consider the legislative history of the term. The Second Circuit has provided an accurate and succinct analysis:

> The governmental plan exemption was included for several reasons. First, it was generally believed that public plans were more generous than private plans with respect to their vesting provisions. H.R. Rep. No. 533, 1974 U.S. Code Cong. & Ad. News at 4667. Second, it was believed that "the ability of the governmental entities to fulfill their obligations to employees through their taxing powers" was an adequate substitute for both minimum funding standards and plan termination insurance. S. Rep. No. 383, 93d Cong., 2d Sess., *reprinted in*, 1974 U.S. Code Cong. & Ad. News 4890, 4965; H.R. Rep. No. 807, 93d Cong., 2d Sess., *reprinted in*, 1974 U.S. Code Cong. & Ad. News 4670, 4756-57. Finally, there was concern that imposition of the minimum funding and other standards "would entail unacceptable cost implications to governmental entities." H.R. Rep. No. 807, 1974 U.S. Code Cong. & Ad. News at 4830. <u>See also</u> H.R. Rep. No. 533, 1974 U.S. Code Cong. & Ad. News at 4668.
>
> This Congressional reluctance to interfere with the administration of public retirement plans is in part based on principles of federalism. For example, the report of the House Committee on Education and Labor stated:
>
>> There are literally thousands of public employee retirement systems operated by towns, counties, authorities and cities in addition to the state and Federal plans. Eligibility, vesting, and funding provisions are at least as diverse as those in the private sector with the added uniqueness added by the legislative process. For this reason the Committee is convinced that additional data and study is necessary before any attempt is made to address the issues of vesting and funding with respect to public plans.
>
> H.R. Rep. No. 533, 1974 U.S. Code Cong. & Ad. News at 4647. *See also* <u>Feinstein v. Lewis</u>, 477 F.Supp. 1256, 1261 (S.D.N.Y.1979) (purpose of ERISA governmental exemption was to "refrain from interfering with the manner in which state and local governments operate employee benefit systems"), *aff'd*, 622 F.2d 573 (2d Cir. 1980).

Rose v. Long Island R.R. Pension Plan, 828 F.2d 910, 914 (2d Cir. 1987). Here, the plan is privately funded, as the premiums for the plan are paid with funding which comes solely from funds earned by NRH. There is no evidence public money is used to fund or support the plan. Nor is there any suggestion that in the event of a shortfall, a beneficiary could look to the City or some other public source to re-fund the plan.[4] Thus, the concerns that led Congress to exempt "governmental plans" from ERISA are not present here.

The private nature of the plan in question combined with the fact that employees of NRH are treated more akin to employees of a private entity than a governmental one outweighs the public ownership of the facilities and public accountability of the Trustees. Thus, the Court finds that the plan at issue was not established or maintained for the benefit of employees of a political subdivision, agency, or instrumentality of the State of Oklahoma. Consequently, the plan is not exempted from ERISA by the governmental plan exception. Plaintiff's claims are governed by ERISA; her claims for extra-contractual damages are pre-empted by ERISA; and Defendant is entitled to judgment on those claims. Because Plaintiff's claim for breach of contract can be construed as a request under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due under the plan, that claim will survive.

---

[4] The Court notes that the fact the plan is not funded with public money and that the employees are more akin to private employees than public are sufficient facts in the Second, Fifth, and D.C. Circuits to preclude application of the "governmental plan" exception. See Roy v. Teachers Ins. & Annuity Ass'n, 878 F.2d 47, 50 (2d Cir. 1989); Hightower v. Texas Hosp. Ass'n, 65 F.3d 443, 448 (5th Cir. 1995); and Alley v. Resolution Trust Corp., 984 F.2d 1201, 1206 (D.C. Cir. 1993).

Defendant's Objections to Alleged Evidence Relied Upon by Plaintiff in Response to Defendant's Supplemental Summary Judgment Brief (Dkt. No. 111) is MOOT, as the Court did not rely on the challenged evidence in reaching the conclusion herein. Defendant Aetna Life Insurance Company's Motion for Summary Judgment (Dkt. No. 89) is GRANTED in part. Judgment in favor of Defendant on Plaintiff's claims for extra-contractual damages will issue at the close of these proceedings. Plaintiff's claim to recover benefits due under the plan as permitted by 29 U.S.C. § 1132(a)(1)(B) will proceed. This matter will be set for Status/Scheduling Conference.

IT IS SO ORDERED this 13th day of September, 2006.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge